IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR LLOYD MITCHELL, | : | CIVIL ACTION NO. **1:CV-11-1240** |
| Plaintiff | : | (Chief Judge Kane) |
| v. | : | (Magistrate Judge Blewitt) |
| DAUPHIN COUNTY COMMISSIONERS, et al., | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background.**

On June 29, 2011, Plaintiff Victor Lloyd Mitchell, an inmate at the Dauphin County Prison ("DCP"), Harrisburg, Pennsylvania, filed the instant civil rights action, pursuant to 42 U.S.C. § 1983. (Doc. 1). Plaintiff also filed a Motion for leave to proceed *in forma pauperis*. (Doc. 2).

Plaintiff's claims were set forth on a form civil rights complaint routinely provided to inmates. In his form 3-page Complaint, Plaintiff names the following ten (10) Defendants: Dauphin County Commissioners; Jeffrey T. Haste; Michael Pries; George P. Hartwick, III; The Dauphin County Prison Board of Inspectors; Dauphin County Prison Warden DeRose; Deputy Warden Nichols; Deputy Warden Carroll; Police Compliance Officer Lt. Tim Good; and DCP Chaplain Mr. Lutz. (Doc. 1, pp. 1-2).

Plaintiff indicated that DCP has a grievance procedure available and that he filed a grievance regarding his claims. However, Plaintiff clearly indicates that the grievance process at DCP is not

yet completed.[1]  (*Id.*, p. 1).   Thus, Plaintiff appears to admit on the face of his Complaint that he did not exhaust his available DCP administrative remedies with respect to his instant free exercise of religion claims, and he does not contend that it would be futile to do so.

Plaintiff's Complaint does not comport with Fed.R.Civ.P. 8.  In his 3-paragraph Statement of Claim, Plaintiff alleges that the Dauphin County Prison policy prohibiting him from making an official change to his religion violated his First Amendment free exercise of religion right, that DCP only has limited copies of the "common Mormon scriptures" available on a limited, loan basis, unlike Christian bibles, and that Defendant Chaplain Lutz distributed highly inflammatory and highly offensive reading materials in DCP which promoted Christianity and defamed religions other than Christianity, in violation of the Eighth Amendment proscription against cruel and unusual punishment.  (Doc. 1, p. 2).

As relief, Plaintiff requests declaratory judgment, injunctive relief, as well as compensatory and punitive damages.  (*Id.*, p. 3).

Plaintiff's Complaint does not sufficiently specify any conduct, wrongful or otherwise, of the numerous named Defendants except for Defendant Chaplain Lutz, and it does not  mention any personal involvement of a single Defendant with any cognizable constitutional claim.  As stated,

---

[1]Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights  actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*

Plaintiff also admits on the face of his Complaint (Doc. 1, p. 1) that he did not fully exhaust his available DCP administrative remedies with respect to his claims. We now screen Plaintiff's Complaint as we are obliged to do.[2]

## II. PLRA.

As stated, the Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (Doc. 2). The Prison Litigation Reform Act of 1995,[3] (the "PLRA"), obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[4] Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

## III. Section 1983 Standard.

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and

---

[2] This case has been assigned to the undersigned Magistrate Judge for pre-trial matters. *See* 28 U.S.C. § 636(b).

[3] Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[4] The Plaintiff filed an application to proceed *in forma pauperis* with and an authorization to have funds deducted from his prison accounts. (Docs. 2, 3 and 6).

(2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051, *3 (M.D. Pa.). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[5] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005); *Phillips v. Miller*, 2010 WL 771793, *2 (M.D. Pa.).

It is well established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id*. As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

---

[5] Plaintiff alleges in his pleading that all of the individual Defendants are employees of Dauphin County. This is sufficient to show that Defendants are state agents.

*See also Beattie v. Dept. of Corrections SCI-Mahanoy*, 2009 WL 533051,*3("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing *Rode, supra*.

The Court uses the same standard to screen a complaint under the PLRA as it does for a 12(b)(6) motion to dismiss. *See O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.); *Matthews v. Villella*, 2009 WL 311177, *2 (M.D. Pa.).

**IV. Motion to Dismiss Standard.**

In *Reisinger v. Luzerne County*, 2010 WL 1976821, *7 (M.D. Pa.), the Court stated:

The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' "

*Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. *Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

## V. Allegations of Complaint (Doc. 1).

As stated, Plaintiff Mitchell filed this §1983 civil rights action essentially alleging his First Amendment right to free exercise of religion was violated when he was not allowed to officially change his religious faith at DCP after he was confined there for more than ten days, and that this prohibition deprived him of the ability to meet with the proper clergy of his new faith and of the ability to practice his new faith. Also, as stated, Plaintiff alleges that Defendants violated his First Amendment free exercise of religion right since DCP only has limited copies of the "common Mormon scriptures" available on a limited, loan basis, unlike Christian bibles, which are readily available. Finally, Plaintiff avers that Defendant Chaplain Lutz distributed highly inflammatory and highly offensive reading materials in DCP which promoted Christianity and defamed religions other than Christianity, in violation of the Eighth Amendment proscription against cruel and unusual punishment. (Doc. 1, p. 2).

Moreover, as indicated, Plaintiff requests declaratory and injunctive relief as well as compensatory and punitive damages. Plaintiff does not state if he sues the Defendants in both their

individual and official capacities.[6] Also, Plaintiff seeks money damages against Defendants for "humiliation" and "scorn," *i.e.* emotional distress, against all Defendants. (*Id*., p. 3).[7]

## VI. Discussion.

As noted, to the extent that Plaintiff is seeking damages for humiliation and emotional distress under § 1983 (Doc. 1, p. 3), such relief request should be dismissed since Plaintiff fails to allege that he suffered any physical injury. *See Orikhi v. Wood*, 2006 WL 859543, *7-* 8 (M.D. Pa.)("Section 803(d) of the Prison Litigation Reform Act, codified at 42 U.S.C. § 1997e(e), conditions a prisoner's claim for mental or emotional injury on a showing of accompanying physical injury."); *Brooks v. Smith*, 2007 WL 3275266, *2 (M.D. Pa. 11-6-07)("Under the [PLRA], a prisoner may recover compensatory damages for mental or emotional injury only where there is actual physical injury."). We do not find that Plaintiff has alleged any physical injury as a result of the conduct of Defendants. Thus, we recommend that Plaintiff's claim for damages for humiliation and

---

[6]Plaintiff cannot seek compensatory damages from the named Defendants in both their individual and official capacities. To the extent that Plaintiff seeks monetary damages from Defendants, both compensatory and punitive damages, he can only sue the state actor Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Meekins v. Beard*, 2007 WL 675358, *3 (M.D. Pa.); *Atwell v. Schweiker*, 2007 WL 2900565 (3d Cir. 2007) (Non-Precedential).

Thus, insofar as Plaintiff is suing all of the state actor Defendants in both their individual and official capacities and he seeks monetary damages from them, he can only seek monetary damages from these Defendants in their individual capacities. Therefore, any claims of Plaintiff for monetary damages against Defendants in their official capacities should be dismissed.

[7]Plaintiff cannot obtain compensatory damages for mental and emotional distress since he does not allege any physical injury. *See Allah v. Al-Hafeez*, 226 F. 3d 247, 251 (3d Cir. 2000); *Kantamanto v. King*, 651 F. Supp. 2d 313, 320, n. 1 (E. D. Pa. 2009). Thus, this claim for relief should be dismissed.

emotional distress be dismissed from his Complaint.

Also, as noted, we recommend that Plaintiff's claims for monetary damages against Defendants in their official capacities be dismissed. *See Meekins, supra*.

Plaintiff basically alleges violations of his religious rights under the First, Eighth and Fourteenth Amendments, pursuant to §1983, due to DCP's prohibition on inmates from officially changing religions after being confined more than ten days, due to DCP's not having an adequate supply of common Mormon scriptures, and due to DCP's Chaplain, Lutz, distribution of reading materials which promoted Christianity and which defamed other religions.

In *Thompson v. PA DOC*, 2007 WL 404056, *2-*3 (M.D. Pa. 2-1-07), the Court stated:

> The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. Amend. I. In *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Supreme Court held that the First Amendment was incorporated by the Fourteenth Amendment and, thus, was applicable to the states.
> It is well established that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citations omitted). Constitutional rights, however, including the right to practice religion, may be reasonably restricted in order to facilitate valid penological objectives, such as deterrence of crime, rehabilitation of prisoners, and institutional security. *See Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 132, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977); *Pell v. Procunier,* 417 U.S. 817, 822-23, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Accordingly, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell,* 417 U.S. at 822.

As mentioned, Plaintiff fails to sufficiently allege the personal involvement of any Defendant with respect to his constitutional claims except for Defendant Chaplain Lutz. In fact, the only Defendant who Plaintiff specifically refers to in his 3-paragraph Statement of Claim is Defendant Lutz. (Doc. 1, p. 2). Plaintiff does not allege the personal involvement of Defendants Dauphin County Commissioners, Jeffrey T. Haste, Michael Pries, George P. Hartwick, III, The Dauphin County Prison Board of Inspectors, Dauphin County Prison Warden DeRose, Deputy Warden Nichols, Deputy Warden Carroll, and Police Compliance Officer Lt. Tim Good.

As stated, it is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Id*. Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.; Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

The Supreme Court in *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), repeated the personal involvement necessary in a § 1983 action. In *Innis v. Wilson*, 2009 WL 1608502, *2 (3d Cir. 2009), the Court stated:

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* No. 07-1015, slip op. at 14 (May 18, 2009) [129 S. Ct. 1937 (2009)] (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,

> 570 (2007)).
>
> "Innis's allegation against Wilson also fail because Innis is attempting to establish liability based on supervisory liability. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988) (liability cannot be predicated solely on the operation of respondeat superior, as a defendant must have personal involvement in a civil rights action). Innis does not allege that Wilson had personal knowledge of his injury and subsequently acted with deliberate indifference. *Spruill,* 372 F .3d at 236. Accordingly, these claims were properly dismissed."

*See Rhines v. Bledose*, 2010 WL 2911628, *2 (3d Cir.).

As discussed above, we do not find that Plaintiff has specifically stated the personal involvement of Defendants Dauphin County Commissioners, Jeffrey T. Haste, Michael Pries, George P. Hartwick, III, The Dauphin County Prison Board of Inspectors, Dauphin County Prison Warden DeRose, Deputy Warden Nichols, Deputy Warden Carroll, and Police Compliance Officer Lt. Tim Good with respect to any of his constitutional claims. Thus, these stated nine (9) Defendants are subject to dismissal without prejudice.

In *George v. PA DOC*, 2010 WL 936778, *4 (M.D. Pa.), the Court stated:

> The doctrine of *respondeat superior* does not apply to constitutional claims. *See Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" ); *see also Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of *respondeat superior* ) (citing *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. *Iqbal, supra,* --- U.S. at ----, 129 S.Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode,* 845 F.2d at 1207. "In order to satisfy the 'personal involvement' requirement, a [§ 1983] complaint need only

> allege the conduct, time, place and person responsible." *Solan v. Ranck,* 326
> F. App'x 97, 101 (3d Cir.2009) (per curiam) (nonprecedential).

*See also Santiago v Warminister Tp.*, 2010 WL 5071779, * 5 (3d Cir. 12-14-10); *Sims v. Piazza*, 2009 WL 3147800, *5 (M.D. Pa.)("Legal conclusions without factual support are not entitled to the assumption of truth.")(citation omitted).

Moreover, we do not find that Plaintiff's stated allegations against Defendant Chaplain Lutz amount to an Eighth Amendment cruel and unusual punishment claim. *See Caldwell v. Luzerne County Corrections Facility Management*, 732 F.Supp.2d 458, 469-470 (M.D. Pa. 2010).

More significantly, however, we find that Plaintiff admits on the face of his Complaint (Doc. 1, p. 1) that he has not yet fully exhausted his available administrative remedies at DCP. We will recommend that Plaintiff's action be dismissed without prejudice to file a new action after he exhausts his DCP administrative remedies.

As mentioned, it is quite apparent from the face of Plaintiff's Complaint that he has not yet fully exhausted all of his DCP administrative remedies before he filed this action, as required. (Doc. 1, p. 1). We find that in screening Plaintiff's Complaint under the PLRA, the Court can *sua sponte* dismiss Plaintiff's action since his pleading is clear that he did not exhaust his administrative remedies regarding his claims before he filed his action. *See Robinson v. Varano*, Civil No. 10-2131, M.D. Pa. (January 25, 2011 Order); *Jones v. Lorady*, Civil No. 11-0666, M.D. Pa. (June 17, 2011 Order).

In *McPherson v. U.S.*, 2010 WL 3446879, *3-*4 (3d Cir. 9-2-10), the Third Circuit recently stated:

McPherson argues that the District Court's dismissal of his complaint as time-barred was wrong on both procedural and substantive grounds. As a procedural matter, McPherson contends that *sua sponte* dismissal on statute of limitations grounds is inconsistent with our holding in *Ray v. Kertes,* 285 F.3d 287 (3d Cir.2002). On substantive grounds, McPherson contends, without substantiation, that equitable tolling may allow him to pursue this action long after the limitations period otherwise expired.

*Ray* concerned a provision of the Prison Litigation Reform Act ("PLRA") that states that "[n]o action shall be brought with respect to prison conditions ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). While recognizing that the statute clearly requires plaintiffs to exhaust their administrative remedies, we rejected a pleading rule that would have required a complaint to allege facts demonstrating exhaustion. Rather, we held that "failure to exhaust is an affirmative defense to be pleaded by the defendant." *Ray,* 285 F.3d at 295.

We also found that the court below erred in *sua sponte* dismissing a complaint that did not demonstrate that the plaintiff exhausted administrative remedies. *Id.* We relied primarily on the text of § 1997e, which provides for *sua sponte* dismissal if a complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. *Ray,* 285 F.3d at 296 (citing 42 U.S.C. § 1997e(c)(1)). We also noted that the statute explicitly allows a court to dismiss a complaint without first requiring the exhaustion of administrative remedies." *Id.* (citing 42 U.S.C. § 1997e(c)(2)). We concluded, under the principle of *expressio unius est exclusio alterius,* that the omission of "failure to exhaust" from the grounds for sua *sponte* dismissal indicated Congressional intent not to include failure to exhaust as a reason justifying dismissal. *Id.*

McPherson argues that *Ray* stands for the general proposition that a court may not *sua sponte* dismiss a complaint on the basis of *any* affirmative defense, including the statute of limitations. To be sure, a limitations defense is an affirmative defense. *See Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir.2002). *Ray,* however, does not go as far as McPherson claims. This Court has long recognized that the statute of limitations can serve as the basis for dismissal under Fed.R.Civ.P. 12(b)(6), as long as "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Bethel v. Jendoco Const. Corp.,* 570 F.2d 1168, 1174 (3d Cir.1978) (internal quotation marks omitted). **This principle is consistent with our observation in *Ray* that, "[a]s a general proposition, sua sponte dismissal is inappropriate unless the basis is apparent from the face of the complaint." *Ray,* 285 F.3d at 297. Ray's failure to exhaust was not apparent from the face of his complaint, so *sua sponte* dismissal was not appropriate.**

12

> The fact that a claim has not been brought within the statue of limitations, however, may be apparent from the face of a complaint. The United States Supreme Court, while agreeing that failure to exhaust under the PLRA is an affirmative defense and that plaintiffs need not demonstrate exhaustion in their complaints to survive dismissal, nonetheless recognized that a court may dismiss a complaint for failing to state a claim when its allegations show that the complaint is not timely. The Court noted that "[i]f the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to make a claim; that does not make the statute of limitations any less an affirmative defense." *Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). The factual allegations in the complaint, not the label of "affirmative defense," control the court's decision whether to dismiss the suit. "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." *Id*.
>
> Failure to exhaust and the statute of limitations are similar "in the abstract": they are both affirmative defenses. But, a court may nonetheless dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint. We see no reason why a district court, when screening a complaint pursuant to the PLRA, may not *sua sponte* dismiss a suit whose allegations make clear that the action is not timely. Indeed, other Courts of Appeals have recognized that dismissal under these circumstances is appropriate. *See, e.g., Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir.2006); *Dellis v. Corr. Corp. of Am.,* 257 F.3d 508, 511 (6th Cir.2001); *Nasim v. Warden, Maryland House of Corr.,* 64 F.3d 951, 956 (4th Cir.1995) (en banc); *Pino v. Ryan,* 49 F.3d 51, 53-54 (2d Cir.1995).FN4 We agree that when a statute-of-limitations defense is apparent from the face of the complaint, a court may sua sponte dismiss the complaint pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1915A.

(Emphasis added).

Thus, based on *McPherson, Lorady and Robinson*, even though exhaustion is an affirmative defense pursuant to *Ray*, *sua sponte* dismissal of Plaintiff Mitchell's action by this Court is nonetheless proper since his failure to fully exhaust his DCP administrative remedies available to him[8] is abundantly clear from the face of his Complaint.  In *Ray*, unlike the present case, the

---

[8]We note that the DCP has a Grievance System available to its inmates.  *See Mangus v. Dauphin County Prison,* 2010 WL 521114 (M.D. Pa. 2-9-10).  In *Mangus*, the Court stated: "The grievance appeal process that Dauphin Count Prison calls upon inmates to follow four steps: (1) the submission of a grievance for review and determination by the Warden; (2) an

13

inmate's failure to exhaust was not apparent from the face of his Complaint. *Id.*, at *3.

Initially, the issue of whether Plaintiff fully exhausted all of his DCP administrative remedies which were available to him is a question of law for the Court to decide. *See Drippe v. Tobelinski*, 604 F. 3d 778, 782 (3d Cir. 2010)("exhaustion of administrative remedies under the PLRA is a question of law to be determined by the judge")(citation omitted).

In *Womack v. Smith*, 310 Fed. Appx. 547, 550 (3d Cir. 2009), the Court stated:

> The Prison Litigation Reform Act (PLRA), requires full and procedurally proper exhaustion of all available administrative remedies as a prerequisite to prisoner suits challenging prison conditions under federal law. 42 U.S.C. § 1997e(a); *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); *Spruill v. Gillis,* 372 F.3d 218 (3d Cir.2004). "[P]rison grievance procedures supply the yardstick for measuring procedural default." *Spruill,* 372 F.3d at 231.

Section 1997(a) of the Prison Litigation Reform Act ("PLRA") provides that:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility, until such administrative remedies as are available are exhausted. 42 U.S.C. § 1997e(a).

In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions,

---

appeal of the warden's decision to the Chairman of the Dauphin County Prison Board of Inspectors; (3) an appeal of the Chairman's decision to the full Dauphin County Prison Board of Inspectors; and (4) an appeal from the Prison Board's decision to the Dauphin County Solicitor." *Id*. at *7.

Thus, an inmate must complete all parts of the grievance process to establish that he has exhausted his administrative remedies. *Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted). Failure to complete any component of the administrative process will preclude an inmate's claim in federal court. *Id.*

including § 1983 actions or actions brought pursuant to any other federal law. The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id*.

The Third Circuit has stated that the PLRA "requires that inmate-Plaintiffs exhaust all administrative remedies **prior to filing suit in federal court**." *Banks v. Roberts*, 2007 WL 3096585, *1 (3d Cir. 10-19-07)(Non-Precedential) (citation omitted)(emphasis added). The *Banks* Court also noted that a futility exception to the PLRA's mandatory exhaustion requirement is completely precluded. *Id*. *See also Nyhuis v. Reno,* 204 F. 3d 65 (3d Cir. 2000).

As the Court stated in *Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.):

> Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. *See* 42 U.S.C. § 1997e(a); *see Woodford v Ngo*, 126 S.Ct. 2378 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516 (2002). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 126 S.Ct. at 2387 (internal quotation and citation omitted). "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Id*. at 2388.
>
> The PLRA mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Id*. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386. Failure to substantially comply

> with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2002).

The present Complaint is clear that Plaintiff has not yet completed exhaustion of his stated free exercise of religion claims against Defendants. In fact, as stated, Plaintiff just recently began his confinement in DCP on December 29, 2010.

The law is clear that Plaintiff Mitchell was required to exhaust his administrative remedies before he filed his instant action. *See Walker v. Health Services, Lewisburg Penitentiary*, 2007 WL 1395361, *3 (M.D. Pa.). The law is also clear that Plaintiff cannot complete exhaustion while his present action is pending with this Court. Rather, Plaintiff's instant case must be dismissed without prejudice and he can file a new action once he completes exhaustion. The Third Circuit stated that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." *Oriakhi v. United States*, 165 Fed.Appx. 991, 993 (3d Cir. 2006) (not precedential). The *Oriakhi* Court found that the lower court had properly dismissed plaintiff's complaint because his exhaustion attempt took place after he filed his *Bivens* claim. "[T]he district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred." *Oriakhi*, 165 Fed. Appx. at 993 (quoting *Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003)).

Accordingly, we will recommend that Plaintiff Mitchell's Complaint (Doc. 1) be dismissed without prejudice to file a new action after he completes exhaustion of his DCP administrative

remedies.

**VII. Recommendation.**

Based on the above, it is respectfully recommended that Plaintiff Mitchell's Complaint **(Doc. 1)** be dismissed without prejudice to file a new action after he completes exhaustion of his DCP administrative remedies, and that this case be closed.

<u>**s/ Thomas M. Blewitt**</u>
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: July 18, 2011**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR LLOYD MITCHELL, | : | CIVIL ACTION NO. **1:CV-11-1240** |
| Plaintiff | : | (Chief Judge Kane) |
| v. | : | (Magistrate Judge Blewitt) |
| DAUPHIN COUNTY COMMISSIONERS, et al., | : | |
| Defendants | : | |

**NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 18, 2011.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                   **s/ Thomas M. Blewitt**
                                                   **THOMAS M. BLEWITT**
                                                   **United States Magistrate Judge**

**Dated: July 18, 2011**